UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BARRY CONCRETE, INC.

VERSUS

MARTIN MARIETTA MATERIALS, INC.

CIVIL ACTION

NO. 06-504-JJB-CN

**RULING ON MOTION FOR RECONSIDERATION**

This matter is before the court on a Motion for Reconsideration (doc. 40) by Third-Party Defendant, Western World Insurance Company (hereinafter "Western World"). Martin Marietta Materials, Inc. ("Martin Marietta") and Barry Concrete ("Barry") have filed opposition motions (docs. 45 and 44 respectively). Western World has filed a reply brief (doc. 46). Oral argument is not necessary. Jurisdiction exists pursuant to 28 U.S.C. §§ 1332, 1367.

**Analysis**

**I.    Standard on Motion for Reconsideration**

Under Rule 54(b) of the Federal Rules of Civil Procedure, district courts have discretion to reconsider interlocutory rulings. *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 474-75 (M.D. La. 2002). Although parties often discuss Fed. R. Civ. Pro. 59 in conjunction with motions for reconsideration, the plain language of Rule 59 indicates that it only applies "after entry of judgment" is made. Fed. R. Civ. Pro. 59. This distinction is relevant because the time limitations and standards for granting reconsideration are looser under Rule 54(b) than under Rule 59.

1

*Livingston*, 259 F.Supp. 2d at 475. Because final judgment has not been entered in this matter, the ten day time restriction under Rule 59 is inapplicable and Martin Marietta's timeliness argument is without merit.[1]

Courts are concerned with principles of finality and judicial economy, but even with that in mind, "the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *American Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (although not controlling on this court, this case provides an excellent explanation of motions for reconsideration and the applicable legal standards). As a result, the court retains jurisdiction under Rule 54(b) over all claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued.

### A.   Coverage Under the Auto Policy

In light of case law not previously addressed in the parties' briefs, this court finds that it incorrectly applied the "Care, Custody, or Control Exclusion" to the Auto Policy, and this court must alter its prior holding to correct a manifest error of law. The Auto Policy does defines the term "property damage" as "damage to or loss of use of tangible property."[2] Pursuant to the Auto Policy, "property damage to . . . property owned <u>or</u> transported by the 'insured' <u>or</u> in the 'insured's' care, custody, or

---

[1] *See* Martin Marietta's Memorandum in Opposition to Western World Ins. Co.'s Motion for Reconsideration (doc. 45) at 3.

[2] Auto Insurance Policy (doc. 23, Exh. D) at 13.

control" is excluded from coverage.[3]  Louisiana courts have applied this exclusion to trucking companies transporting property for profit.  *See Bergquist v. Fernandez*, 535 So.2d 827, 829 (La. App. 2d Cir. 1988) (enforcing the exclusion when a horse trailer overturned and damaged the horses being transported); *Allstate Ins. Co. v. Reid*, 934 So. 2d 56, 61 (La. App. 1st Cir. 2005) (enforcing a similar exclusion when a boat was damaged in transit on a trailer).

Barry Concrete alleges that the aggregate was damaged during transport,[4] and this court previously held that the aggregate was contaminated "during transport."[5]  As the plain language of this policy excludes property damage to items "transported by the insured,"[6] the Auto Policy effectively excludes coverage for damage to the aggregate in the instant action.  The court incorrectly ignored its own finding that the insured "transported" the aggregate in initially denying summary judgment, and this court now alters its prior holding to conform to its own findings of fact.  The damage to the aggregate during transport is clearly excluded under the language of the Auto Policy.

In addition to damage to the concrete aggregate itself, Barry Concrete alleges that the contaminated concrete would not cure which necessitated the "demolition

---

[3] Auto Insurance Policy (doc. 23, Exh. D) at 4.

[4] Barry's Petition for Damages (doc. 1, Exh. A) at ¶ 11.

[5] Ruling on Motion for Summary Judgment (doc. 34) at 6.

[6] Auto Insurance Policy (doc. 23, Exh. D) at 4.

and the replacement of the concrete slab and foundation" when the aggregate was poured.[7] Barry Concrete further alleges that replacing the slab resulted in $378,000 in damages.[8] Western World contends that if damage to the transported aggregated is excluded, then consequential damages to the concrete slab are also excluded.[9]

Insurance companies in Louisiana are permitted to exclude coverage for consequential damages as a result of damage to property. *See Borden v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1086 (La. 1983) ("*Borden I*"; ruling amended upon rehearing because the court utilized a definition not found in the policy; the policy language in the instant action resembles the initial, although incorrect, definition used by the court). In *Borden I*, the Louisiana Supreme Court held that loss of use is not an independent form of property damage, but merely measures part of the physical damage to property. *Id.* In other words, "[l]oss of use of physically damaged property is not property damage in and of itself. It is dependent on coverage afforded the damaged tangible property under the policy." *Id.* In other words, if the "injury to and/or destruction of property is not covered, the resulting loss of use is not covered . . . The loss of use grew out of the injury and/or destruction, and since the injury and/or destruction were excluded, the loss of use was excluded as a necessary consequence." *Id.* at 1086, *quoting* Torrington v. Aetna Casualty &

---

[7] Barry's Petition for Damages (doc. 1, Exh. A) at ¶ 8-9.

[8] *Id.* at ¶ 10.

[9] Western World's Reply to Opposition (doc. 46) at 4-6.

Surety Co., 216 S.E. 2d 547, 550 (S.C. 1975).

In this case, the contamination of the aggregate during transport made it unsuitable for use as the sugar prevented the concrete from curing. The inability to employ the aggregate in its intended use constitutes "loss of use." Comparing the policy language analyzed in *Borden I* and upon rehearing *Borden II*, the language of the policy at issue mirrors the language in the initial *Borden* decision where the Louisiana Supreme Court denied coverage of consequential damages under the policy.[10] In its initial decision, the Louisiana Supreme Court relied on a definition of property damage including "physical injury to or destruction of tangible property which occurs during the policy period, *including the loss of use thereof at any time resulting therefrom.*" *Borden I*, 454 So.2d at 1086 (emphasis added). On rehearing, the court reversed its prior finding because the true definition of property damage contained in the policy was "loss of use of tangible property which *has not been physically injured or destroyed.*" *Borden II*, 454 So.2d at 1090. The Supreme Court construed this limitation as excluding coverage for loss of use of *undamaged* property, but allowing recovery for loss of use of *damaged* property. *Id.*

The definition in the instant action resembles the definition used in *Borden I*, because it does not contain the limitation of property which "has not been physically

---

[10] *See* Borden v. Howard Trucking Co., Inc., 454 So.2d 1081, 1086 (La. 1983) ("Borden I").

injured or destroyed."[11]  In the same opinion, the Louisiana Supreme Court also noted that it would be simple for an insurer to exclude consequential damages with a provision excluding coverage for "loss of market delay, loss of use, or any other remote or consequential loss."  *Borden II*, 454 So.2d at 1091.  The Western World policy excludes recovery for "property damage" to items "transported by the insured," and because "property damage" is broadly defined to include "damage to or loss of use of tangible property," Western World is not liable for loss of use of the aggregate including damage to the slab.

      **B.**    **Clarification of Coverage Under the Cargo Policy**

This court previously found that Western World's Cargo Policy effectively excluded coverage for damage to the aggregate under the contamination exclusion.[12]  The contamination exclusion denied coverage for damage to the aggregate caused by insufficient packaging, contamination, or leakage.[13]  The Cargo Policy also excluded coverage for "delay, loss of market, or loss of use; or 'loss' caused by such delay, loss of market, or loss of use."[14]  The court finds that the contamination to the aggregate made it unfit for use within the everyday meaning of

---

    [11] Borden v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La. 1984) ("Borden II").

    [12] Ruling on Motion for Summary Judgment (doc. 34) at 6.

    [13] Cargo Insurance Policy (doc. 23, Exh. C) at 2-3.

    [14] Cargo Insurance Policy (doc. 23, Exh. C) at 3.

the phrase. To clarify the court's initial ruling, the contamination provision excluded property damage to the aggregate itself; whereas; the "loss of use" provision excludes coverage of consequential damage to the concrete slab.

Accordingly, the Motion for Reconsideration (doc. 40) by Western World is hereby **GRANTED**, and summary judgment on the issue of coverage under the Auto Policy is hereby **GRANTED** in favor of Western World. The court will entertain a Rule 54(b) Motion if such a motion is filed.

Baton Rouge, Louisiana, April 28, 2008.

_____
JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA